AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| Carter Kangas | ) | Case No. 3:25-mj-161 |
| | ) | |
| Defendant(s) | ) | |

FILED
RICHARD W. NAGEL
CLERK OF COURT
3/31/25
U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
WEST. DIV. DAYTON

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __2024 and February 2025__ in the county of __Montgomery and Warren__ in the __Southern__ District of __Ohio__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 922(g)(3) & 924(a)(8) | possession of a firearm in interstate or foreign commerce by a person who is an unlawful user of or addicted to any controlled substance |
| 18 U.S.C. § 924(a)(1)(A) | knowingly making false statements or representations with respect to information required by chapter 44 of Title 18 of the United States Code |

This criminal complaint is based on these facts:

See Attached Affidavit of P. Andrew Gragan

☑ Continued on the attached sheet.

*P. Andrew Gragan*
Complainant's signature

P. Andrew Gragan, SA of the FBI
Printed name and title

Sworn to by reliable electronic means -- namely, telephone.

Date: 3/31/25

Peter B. Silvain, Jr.
United States Magistrate Judge

City and state: Dayton, Ohio

## AFFIDAVIT IN SUPPORT OF APPLICATION

I, P. Andrew Gragan, hereby duly sworn, declare and state:

## INTRODUCTION

1. I am a Special Agent (SA) of the Federal Bureau of Investigation (FBI) assigned to the Dayton Resident Agency of the Cincinnati Field Division. As such, I am an "investigative or a law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7); that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 21, United States Code, Section 801, et. sec., and Title 18, United States Code, Section 2516.

2. I am a Special Agent with the Federal Bureau of Investigation ("FBI"), Cincinnati Division. I have been employed as a Special Agent with the FBI since May 2016. I have received training in national security investigations and criminal investigations. I have conducted investigations related to international terrorism, domestic terrorism, white-collar crimes, drug trafficking, firearms, violent crimes, and public corruption. As part of those investigations, I have participated in physical surveillance and records analysis, worked with informants, conducted interviews, served court orders and subpoenas, executed search and arrest warrants, and testified before grand juries and in trial. As a federal agent, I am authorized to investigate violations of laws of the United States, and as a law enforcement officer I am authorized to execute warrants issued under the authority of the United States.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and does not set forth all of my knowledge about this matter.

## PURPOSE OF AFFIDAVIT

4. I make this affidavit in support of a criminal complaint and arrest warrant for Carter Kangas for violations of:

    a. 18 U.S.C. §§ 922(g)(3) and 924(a)(8) (possession of a firearm in interstate or foreign commerce by a person who is an unlawful user of or addicted to any controlled substance); and

    b. 18 U.S.C. § 924(a)(1)(A) (knowingly making false statements or representations with respect to information required by chapter 44 of Title 18 of the United States Code).

## PROBABLE CAUSE

**A. Summary of Investigation**

5. As detailed more fully below, FBI has developed information from multiple sources that Carter KANGAS is a daily user of illegal controlled substances – namely, marijuana – who not only knowingly possessed firearms but also intentionally provided false information to a Federal Firearms Licensee ("FFL") to acquire one or more of these weapons.

**B. On February 11, 2025, Officers Encounter an Armed KANGAS in the Dayton, Ohio Area**

6. On or about February 11, 2025, Montgomery County (Ohio) Sheriff Office (MCSO) Deputies responded to a home in Washington Township, Ohio, on a complaint that Carter KANGAS was threatening its resident ("VICTIM-1") and her daughter ("VICTIM-2"). KANGAS was dating VICTIM-2 and resided with VICTIM-1 and VICTIM-2 at the Washington Township home. In speaking with police, VICTIM-1 advised that KANGAS had threatened to kill VICTIM-1. While the threat was troubling in its own, VICTIM-1 explained that KANGAS often carried weapons, adding to VICTIM-1's concerns.

7. That same day, based on the complaint, MCSO arrested KANGAS at the residence for aggravated menacing. Incident to this arrest, officers searched KANGAS and discovered him in possession of a Springfield Armory XD-M Elite 10mm pistol (S/N BE139257), three magazines, and ear plugs. Notably, KANGAS was wearing soft body armor when arrested. Officers later test fired the Springfield Armory firearm, and it operated. ATF Special Agent Chris Reed, who has training in the origin of firearms, confirmed to the FBI that this Springfield Armory firearm was not manufactured in Ohio and therefore crossed a state line to reach Ohio.

8. KANGAS was transported to the Montgomery County Jail, where he remained detained until on or about February 20, 2025. On that date, state authorities released KANGAS on a bond that contained a no-contact order with VICTIM 1. While detained at the Montgomery County Jail prior to his release, KANGAS used the facilities consensually monitored phone and email systems to communicate with other individuals. During these communications, KANGAS admitted that he was a chronic, daily user of marijuana, including at the time of his arrest with the Springfield Armory pistol. For instance:

   a. On or about February 15, 2025, during a consensually recorded call with VICTIM-2, KANGAS explained: "You and your parents have never seen me off weed . . . ." Based on my training and experience, "weed' is a slang term of marijuana.

   b. Likewise, on or about February 17, 2025, in a message to VICTIM-2 from the jails consensually monitored email system, KANGAS wrote: "I keep forgetting that you've never seen me off weed!"

   c. Based on subsequent information obtained from VICTIM-1 and VICTIM-2, I know that KANGAS had interacted with their family for over a year. I therefore believe

3

that, through the above statements, KANGAS admitted that he was a marijuana user throughout the time that he knew these individuals – including the date that he possessed the Springfield Armory pistol.

**C.     During Late February 2025, Law Enforcement Recovers More Firearms Belonging to Marijuana User Kangas**

9.     On or about February 20, 2025, police received calls to conduct a welfare check on KANGAS, who had relocated to a Motel 6 in Washington Township. Ohio.   Deputies went to KANGAS's room, knocked on the door, and identified themselves.   KANGAS, however, would not open the door.   Looking through a window into KANGAS's room, officers observed a rifle in his motel room.

10.     On or about February 21, 2025, KANGAS's reservation at the Motel 6 expired but he failed to remove his belongings from the room.   Having deemed KANGAS to have abandoned the room, Motel 6 gave officers access to it to collect the belongings in it which included a Radical Arms AR-15 rifle (S/N 2-059659, NIF), retail smoke bombs, tire deflation devices, drug paraphernalia, and a handwritten note.

   a.     The handwritten note – which KANGAS later confirmed that he wrote – contained the following verbatim statements:

- "The white race is being destroyed and no one cares. The whites are the one's most keen on destroying themselves it seems. The black race is an abomination and is being used as a pawn to sexually destroy the other races through assimilation. The ones who control this matrix understand the energetic dynamics of the different humanoid species on earth. They know the whites are the most Advanced and so they seek to destroy use"

4

- "In the media (black men < white women commercials) → (sexual assimilation)"
- "In the universities and high school (teaching students incorrect, deceptive, and misleading history to create an inferiority complex)"
- "Through laws (Bail return = letting Blacks get away)"
- "Allowing open Anti-white Racism everywhere yet claiming "White Supremacy" is still the biggest threat"
- "Well guess what, now it really is! Why? Because I Am here and I will be back to finish the mission. Everyone besides the Superior Aryan race will be extinct."
- "It is war. WAR"

  b. Officers reviewed the recovered drug paraphernalia, and it included a plastic grinder, glass tube, and glass smoking device, all which contained suspected drug residue. Lab results confirmed that some of this residue contained THC, a Schedule I controlled substance found in marijuana.

  11. On or about February 21, 2025, an MCSO deputy saw KANGAS walking along Mad River Road in Washington Township and attempted to serve him with a trespass notice from the Motel 6. Given KANGAS's history of firearm possession, the officer conducted a Terry patdown of KANGAS upon approaching him. The officer discovered KANGAS had concealed on his person a Taurus GC3 9mm pistol (S/N AEG478275); he again was wearing soft body armor. MCSO arrested KANGAS for carrying a conceal weapon.

5

  a. During his transport to the jail, KANGAS made multiple statements including: "You have no idea who I am"; "You laugh now, I'll have the last fucking laugh"; "I have nothing to lose"; "I'm a black powder expert.   There are always more weapons to use."

  b. Upon arriving at the Montgomery County Jail, officers removed KANGAS from the patrol car.   As they did so, KANGAS began shouting at a Black officer present at the facility: "I don't care if there's five of them on me, [UI] be fucking a corpse you litter n**** bitch. You fucking bitch boy. Send me to prison, send me there. I'll tear your dick off and shove it in your ass." KANGAS continued to direct his comments at the Black officer, stating, "[UI] be fucking a corpse n****."   Inside the intake room of the Montgomery County Jail, KANGAS continued to make spontaneous utterances, including: "a white man should be helping me kill a fucking n**** [UI].   Send me to prison for the A and B or I'll die trying." An officer asked KANGAS:   "Are you talking about the Aryan Brotherhood?".   KANGAS responded:   "yeah. [UI] yeah they are. They're ruthless motherfuckin' killers."

 12. On or about February 25, 2025, MCSO went to VICTIM-1's residence and removed pursuant to not only a court order but also VICTIM-1's consent, multiple firearms and ammunition that KANGAS had left at VICTIM-1's residence.   The items removed included: a Maverick Arms Model 88 12-gauge shotgun (S/N MV1083348); Stevens Model 320 12-gauge shotgun (S/N 216219S); TBP semi-automatic 12-gauge shotgun (S/N 52-H23YB-001735); Taurus GC3 9mm pistol (S/N AEH6492022); magazines; ammunition; and as well as Spartan Armor Vest with plates.   VICTIM-1 and VICTIM-2 confirmed that these firearms belonged to KANGAS.

 13. Law enforcement examined the firearms recovered on February 25, 2025, from VICTIM-1's residence, including the Taurus handgun.   Officers determined that the Taurus was

operable and in good working order. ATF Special Agent Chris Reed, who has training in the origin of firearms, confirmed to the FBI that this Taurus firearm was not manufactured in Ohio and therefore crossed a state line to reach Ohio.

**D.    During March 2025, Law Enforcement Confirms that Kangas is a Chronic User of Marijuana**

14.    On or about March 4, 2025, law enforcement interviewed VICTIM-2 concerning KANGAS. VICTIM-2 provided the following information:

a.    VICTIM-2 confirmed that KANGAS was a frequent user of controlled substances – namely, marijuana. VICTIM-2 indicated that KANGAS had multiple "red flags" and that marijuana was one of the things that helped him. VICTIM-2 described plans to visit a marijuana dispensary with KANGAS during February 2025.

b.    VICTIM-2 advised that KANGAS was suicidal and had put a gun to his head multiple times (in an apparent threat to kill himself). VICTIM-2 recounted an incident when VICTIM-2 and KANGAS were driving from Columbus when KANGAS saw black men operating motorcycles with loud music. He began to yell a racial slur at the men in an effort to antagonize them. VICTIM-2 advised that KANGAS had an animus toward Black people and would drive around with plans to "hunt" them. VICTIM-2 stated KANGAS had a fantasy of finding a group of Black people, shooting them down, taking on the cops, and dying a hero of the White race.

15.    On or about March 10, 2025, the FBI and MCSO re-interviewed VICTIM-2 and a second individual (identified herein as "INDIVIDUAL-1"). During their conversations with these people, law enforcement learned the following:

a.    According to VICTIM-2, KANGAS smoked marijuana every day and has done so for years. When their relationship began in approximately November 2023, KANGAS

7

smoked marijuana three times every day. When VICTIM-2 began paying for the marijuana, KANGAS and VICTIM-2 cut back to twice a day for financial reasons. During that time, VICTIM-2 and KANGAS went to the marijuana dispensary approximately every other day. VICTIM-2 estimated KANGAS and VICTIM-2 would buy 3.5 grams of marijuana each visit and spent approximately $60 to $90 a week on marijuana. VICTIM-2 paid for the marijuana because KANGAS spent his income on firearms and ammunition. KANGAS typically smoked marijuana in the car, but sometimes smoked in the house as well. VICTIM-2 advised that, after KANGAS's arrest on February 15, 2025, VICTIM-2 threw away their marijuana. When KANGAS learned that VICTIM-2 disposed of the marijuana, KANGAS became upset.

      b.      According to VICTIM-2, KANGAS received monthly disability benefits that he used to purchase firearms and ammunition. VICTIM-2 indicated that, on one occasion, VICTIM-2 accompanied KANGAS when he went to purchase a firearm in Lebanon, Ohio. VICTIM-2 explained that VICTIM-2 went shopping at nearby store when KANGAS went into a different business to purchase a firearm. VICTIM-2 confirmed that KANGAS was always armed and had pointed a firearm at VICTIM-2 in the past.

      c.      According to INDIVIDUAL-1, INDIVIDUAL-1 had witnessed KANGAS smoke marijuana multiple times over the last year.

### E. During March 2025, Law Enforcement Reviewed Forms 4473 on Which KANGAS Lied to Obtain a Firearm.

16. In or around March 2025, law enforcement obtained ATF Form 4473s from an FFL in Lebanon, Ohio, that had sold multiple firearms to KANGAS between January 1, 2023, and September 1, 2024. Based on my training and experience, I know that, in obtaining a firearm from an FFL, a firearm purchaser must complete under penalty of perjury a Form 4473. That form asks certain questions of the purchaser to confirm that they have no prohibiting

8

conditions that bar them from acquiring a firearm such as addiction or use of controlled substances.

17. The Form 4473s reflected the following firearm purchases that KANGAS made from the Lebanon FFL on the identified dates:

    a. a Winchester Istanbul Silah/Baco SXP 12GA (S/N 12AZR05410) on January 1, 2023;

    b. a Radical Arms RF-15 SOCOM 5.56NATO AR-15 rifle (S/N 2-112159) on February 4, 2023;

    c. a Springfield Armory XD-M Elite 10mm pistol (S/N BE139257) on September 2, 2023;

    d. a TBP semi-automatic 12 gauge shotgun (S/N 52-H23YB-001735) on September 22, 2023;

    e. a Taurus GC3 9mm pistol (S/N AEH6492022) on March 12, 2024;

    f. a Taurus GC3 9mm pistol (S/N AEG478275) on July 5, 2024; and

    g. a Maverick Arms Model 88 12 gauge shotgun (S/N MV1083348) on September 1, 2024.

18. Each Form 4473 also identified KANGAS as the transferee/purchaser of the particular firearm and listed his known date of birth and social security number.  Each form asked KANGAS: " Are you an unlawful user, or addicted to, marijuana or any depressant, stimulant, narcotic drug, or other controlled substance? Warning: The use or possession of marijuana remains unlawful under Federal Law regardless of whether it has been legalized or decriminalized for medicinal or recreational purposes in the state where you resided."   In response to this question on each form, KANGAS answered "No", checking the "No" box on the

individual form.   KANGAS signed each form, certifying that his answers were "true, correct, and complete" and that he understood "that a person who answer[ed]" yes to a question concerning drug usage was "prohibited from receiving or possessing a firearm."

19.     Having reviewed KANGAS's jail calls and email messages concerning his marijuana usage, the lab results from residue on certain of the drug paraphernalia recovered from the Motel 6, as well as the statements of VICTIM-2 and INDIVIDUAL 1, law enforcement has concluded that KANGAS falsely answered the above-referenced question on these Form 4473s. Phrased differently, despite being a drug user, KANGAS intentionally lied on the forms concerning his status as a drug user.

20.     Additionally, FBI has reviewed the public posts that KANGAS has made on Facebook accounts subscribed in his name.   During 2019, he posted on Facebook a video of himself using a bong, a common device used to smoke weed.

21.     Based on the facts set forth in the Affidavit, I believe there is probable cause to issue a criminal complaint against Carter Kangas.

*P. Andrew Gragan*
_____
P. Andrew Gragan
Special Agent
FBI

Sworn and subscribed before me on this
 31st day of March 2025.

_____
Peter B. Silvain, Jr.
United States Magistrate Judge

10