UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | Case No. 3:25-CR-42 |
| vs. | : | Judge Michael J. Newman |
| CARTER KANGAS, | : | |
| Defendant. | : | |

**MOTION TO DISMISS THE INDICTMENT**

**ARGUMENT**

This Court should dismiss the charges against Mr. Carter Kangas, as the key statute relied upon is unconstitutional under the Second Amendment both facially and as applied. Section 922(g)(3) of the United States Code prohibits anyone "who is an unlawful user of or addicted to any controlled substance" from possessing a "firearm or ammunition." 18 U.S.C. § 922(g)(3). It is infrequently prosecuted, accounting for around 5% of prosecutions brought under § 922. *United States v. Harrison*, 654 F.Supp. 3d 1191, 1195 (W.D. Okla. 2023) (citing United States Sentencing Commission, What Do Federal Firearms Offenses Really Look Like? 24 (July 2022)). In its current form, § 922(g)(3) "strips a person of their fundamental right to possess a firearm the instant the person becomes an 'unlawful user' of marijuana." *Id*.

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. The Supreme Court has repeatedly reaffirmed that Second Amendment rights belong to the individual, and primarily stem from the need for self-defense. *McDonald v. City of Chi.*,

1

561 U. S. 742, 767 (2010) (quoting *D.C. v. Heller*, 554 U. S. 570, 599 (2008)). These rights are encapsulated in the text of the Amendment and create a presumption that a person may bear arms without government interference. *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 32 –33 (2022). Indeed, "the right to keep and bear arms is among the 'fundamental rights necessary to our system of ordered liberty.'" *United States v. Rahimi*, 602 U.S. 680, 690 (2024) (quoting *McDonald*, 561 U.S. at 778).

The charges against Mr. Kangas infringe on this fundamental right. First, the key section of the United States Code is facially unconstitutional, as there are no circumstances under which it comports with America's historical tradition of firearms regulation. Second, § 922(g)(3) is unconstitutional as applied to Mr. Kangas, as it restricts his rights more than would any of the historical and traditional laws of this Nation. Third, the remaining § 924(a)(1)(A) charge against Mr. Kangas should necessarily be dismissed, as without the underlying § 922(g)(3) charge it becomes immaterial. As such, this Court should dismiss the charges against Mr. Kangas.

I. **18 U.S.C. § 922(g)(3) is facially unconstitutional under the Second Amendment.**

The charges against Mr. Kangas should be dismissed, as § 922(g)(3) is unconstitutional in all its applications. While a showing that a statute is facially invalid is a high bar, indeed "the most difficult challenge to mount successfully," it is not an insurmountable one. *United States v. Salerno*, 481 U.S. 739, 745 (1987). The moving party must "establish that no set of circumstances exists under which the Act would be valid." *Id*. To overcome a Second Amendment challenge such as this, the Government must show that § 922(g)(3) is constitutional in some of its applications. *Rahimi*, 602 U.S. at 693. However, the Government cannot do so.

A Second Amendment challenge is subject to "a two-step process." *United States v. Connelly*, 117 F.4th 269, 274 (5th Cir. 2024). First, as a threshold matter, a court determines whether "'the Second Amendment's plain text'" covers a challenger's conduct. *United States v. Williams*, 113 F.4th 637, 648 (6th Cir. 2024) (quoting *Bruen*, 597 U.S. at 24). The Constitution presumptively protects such conduct. *Id*. Second, "[t]he government must then justify its regulation of that conduct by demonstrating that the regulation 'is consistent with the Nation's historical tradition of firearm regulation.'" *Id*. (quoting *Bruen*, 597 U.S. at 24). The Government will not be able to shoulder this burden, and consequently § 922(g)(3) should be found unconstitutional.

**A.  Mr. Kangas's conduct is covered by the Second Amendment.**

The Second Amendment presumptively protects Mr. Kangas's conduct. The right to bear arms belongs to "the People." U.S. Const. amend. II. The Second Amendment "unambiguously refers to all members of the political community, not an unspecified subset." *Heller*, 554 U.S. at 580. The Bill of Rights refers to "the people" five times. *Connelly*, 117 F.4th at 274. In doing so, it recognizes that fundamental rights belong to all members of our political community, not a special group of upright citizens. *Heller*, 554 U.S. at 580 (citing *United States v. Verdugo-Urquidez*, 494 U.S. 259, 265 (1990)). Therefore, "the Second Amendment right is exercised individually and belongs to all Americans." *Id*. at 581. The Second Amendment presumptively protects the conduct of all of "the people," including felons and drug users. *See Williams*, 113 F.4th at 649 (holding that the Second Amendment's plain text presumptively protects the possession of a firearm by a person with two felony counts of aggravated robbery); *Connelly*, 117 F.4th at 274 (holding that a marijuana user has a presumptive right to bear arms).

Regardless of any alleged recreational marijuana use, Mr. Kangas is a member of the Nation's political community and thus has a presumptive right to bear arms. By infringing on that right, § 922(g)(3) contradicts the Second Amendment's plain text. Therefore, the burden shifts to the Government to "sift the historical materials for evidence to sustain [the Government's] statute." *Bruen*, 597 U.S. at 60.

**B. The Nation's historical tradition of firearms regulation prohibits this regulation.**

The Government cannot meet its burden of showing sufficient evidence that § 922(g)(3) is in accordance with this Nation's historical tradition of firearms regulation, as sufficient evidence does not exist. Under *Bruen*'s second step, the Government "must show that the challenged regulation is '"relevantly similar" to laws that our tradition is understood to permit.'" *United States v. Knipp*, 2025 U.S. App. LEXIS 12054 *1, *5 (6th Cir., 2025) (quoting *Rahimi*, 602 U.S. at 692). The regulation fails when the Government cannot make that showing. *Id*.

Modern firearm regulations must be "consistent with the 'principles that underpin our regulatory tradition.'" *Williams*, 113 F.4th at 645 (quoting *Rahimi*, 602 U.S. at 692). It is true that a firearm regulation need not have "historical 'twin' to be valid." *Id*. However, the analysis must be done in such a manner that would not "water[] down the right." *Id*. at 645, n. 2 (quoting *Rahimi*, 602 U.S. at 740 (Barrett, J., concurring)). As such, any historical evidence purporting to show that a modern regulation is constitutional must be sufficiently analogous to a permissible regulation at the adoption of the Second Amendment. *See Bruen*, 597 U.S. at 34. Indeed, "courts should not uphold every modern law that remotely resembles a historical analogue, because doing so risks endorsing outliers that our ancestors would never have accepted." *Id*. at 30 (quotation omitted).

4

There is no relevantly similar regulation of firearm ownership embraced by this Nation's history and tradition. "Nothing in our tradition allows disarmament simply because Cooper belongs to a category of people, drug users, that Congress has categorically deemed dangerous. Neither the confinement of the mentally ill nor the going-armed laws operated on an *irrebuttable* basis." *United States v. Cooper*, 127 F.4th 1092, 1096 (8th Cir. 2025). Indeed, the idea of prohibiting firearm possession by those who are users of, or addicted to, controlled substances is both limited and recent, dating back to just 1968. *See* Gun Control Act of 1968, Pub. L. 90–618, 82 Stat. 1213 (codified at 18 U.S.C. § 921 *et seq*.). Such recent history cannot constitute relevantly similar regulation; the Court has explicitly declined to accept twentieth century evidence of the meaning of the Second Amendment. *Bruen*, 597 U.S. at 66, n. 28.

In his concurrence in *United States v. Goins*, 118 F.4th 794, 805 (6th Cir. 2024), Judge Bush writes that "the evidence suggests our nation's history and tradition do not support permanent disarmament because of prior convictions related to drunkenness or the misuse of drugs when, as here, the earlier illegal conduct did not involve a firearm." Judge Bush further explains:

> History and tradition speak loudly here because the societal problem at issue—alcohol and drug abuse—is nothing new. Misbehavior from intoxicants seems to have been as prevalent at the Founding as it is now…. Nonetheless, the Founding generation apparently did not consider a person's history of alcohol or drug misuse to be a good enough reason to permanently deprive that person of his right to possess and use a firearm." *See Connelly*, 2024 U.S. App. LEXIS 21866, 2024 WL 3963874, at *7 ("[N]either Congress nor the states disarmed alcoholics[.]"); 2024 U.S. App. LEXIS 21866, [WL] at *6 ("The government identifies no class of persons at the Founding who were 'dangerous' for reasons comparable to marijuana users."). To the contrary, it seems the Founding generation considered the right to bear arms as too important a right to be limited based simply on a person's prior substance abuse. Guns were needed for self-defense, the provision of food, and the protection of one's community. *See District of Columbia v. Heller*, 554 U.S. 570, 599, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008). Those needs apparently outweighed any justification to permanently disarm based upon a person's past misuse of intoxicants. Indeed, the right to bear arms was fundamentally important for human freedom. *See McDonald v. City of Chicago*, 561 U.S. 742, 778, 130 S. Ct. 3020, 177 L. Ed. 2d 894 (2010) ("[I]t is clear that the Framers and ratifiers of the Fourteenth Amendment counted the right to keep and bear arms among those

5

> fundamental rights necessary to our system of ordered liberty."). This historical understanding seems at odds with the majority's reliance on Goins's DUI and drug convictions [*807] as relevant factors to justify his disarmament. Through its emphasis on those convictions, the majority risks engaging in the type of "legislative interest balancing" *Bruen* rejected. *See* 597 U.S. at 26.118 F.4th 794, 805.

*Id. at* 806-807.

The Government cannot rely on regulations at the time of the enactment of the Second Amendment, as none are sufficiently consistent with the "principles that underpin our regulatory tradition." *Rahimi*, 602 U.S. at 681. Further, there is not a sufficient quantity of such regulations. *Bruen*, 597 U.S. at 46 (noting doubt that "three colonial regulations could suffice to show a tradition of public-carry regulation.") Most importantly, "when a challenged regulation addresses a general societal problem that has persisted since the 18th century, the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." *Id*. at 26. In such cases, the inquiry is "fairly straightforward." *Id*. Substance abuse is just such a societal problem. *United States v. Veasley*, 98 F.4th 906, 911 (8th Cir. 2024). Intoxication is another. *Harrison*, 654 F.Supp. 3d at 1199. Given that the evils sought to be remedied by § 922(g)(3) date back to the Founding, the lack of a distinctly similar historical regulation renders the statute facially unconstitutional.

Even if § 922(g)(3) was tortuously construed to address a uniquely modern problem, such that the Court could expand its historical analysis to include merely similar historical analogues, those longstanding regulations are not "relevantly similar" because they do not impose a comparable burden or evince comparable justifications. *See Bruen*, 597 U.S. at 29–30. In such a case, a court "must consider 'how and why [historical] regulations burden a law-abiding citizen's right to armed self-defense,' and determine whether the challenged regulation is comparably justified." *Williams*, 113 F.4th at 648 (quoting *Bruen*, 597 U.S. at 29). The "how" prong states

6

that a firearm regulation may be unconstitutional if its reach is "beyond what was done at the Founding," even if the "why" is permissible. *Rahimi*, 602 U.S. at 692. The "why" prong instructs that regulations should impose "similar restrictions for similar reasons" to be permissible today. *Id*. There is insufficient evidence, even under the less burdensome "relevantly similar" standard, to overcome the presumption that the Second Amendment protects "the People" from the sweeping embrace of § 922(g)(3). As such, the Court should find § 922(g)(3) unconstitutional under the Second Amendment and dismiss the charges against Mr. Kangas.

## II.     18 U.S.C. § 922(g)(3) is unconstitutional as applied to Mr. Kangas.

This Court should find the charges unconstitutional as applied to Mr. Kangas, as the Second Amendment does not permit the disarmament of an individual for the mere recreational use of marijuana. When considering an as-applied challenge, a court should look at the specific facts of the alleged offense. *United States v. Goins*, 118 F.4th 794, 797 (6th Cir. 2024)). In this case, Mr. Kangas is accused of being a knowing user of marijuana and knowingly possessing firearms. Yet the government's evidence does not appear to differentiate between the form of marijuana that is the controlled substance, Delta-9 THC, and the uncontrolled substance from the same cannabis plant, Delta-8 THC. Both Delta-8 THC and Delta-9 THC are cannabinoids found in the cannabis plant, and both are commonly referred to as marijuana, weed, and a whole host of common nicknames. One cannabinoid is a controlled substance, the other is not.

Although the criminal complaint alleged that "KANGAS went to the marijuana dispensary approximately every other day," the discovery suggests that Kangas did not go to any marijuana dispensaries but instead purchased legal marijuana products at a variety of smoke shops. These retailers only sell uncontrolled cannabinoid products derived from hemp, which are not only

legal under Ohio state law, but are federally legal under the Farm Bill of 2018. Furthermore, even if the government can prove that Mr. Kangas is the user of Delta-9 THC, the government has the burden of proving that this use was not legal under the Farm Bill of 2018. Importantly, the Farm Bill of 2018 federally *legalized* Delta-9 THC, as long as the concentrations of Delta-9 THC are not greater than 0.3 percent. The facts here do not establish that Mr. Kangas is a user of Delta-9 THC at greater levels than 0.3 percent.

While an as-applied challenge may be deferred so as not to invade the province of the jury, that is only necessary when the challenge is "tantamount to attacking the sufficiency of the evidence." *United States v. Laykovich*, 2024 U.S. Dist. LEXIS 180314 *1, *11 (E.D. Ky. 2024). Assuming, arguendo, the sufficiency of the evidence, i.e., even if the government can prove Mr. Kangas is a user of a controlled substance, the facts alleged by the government do not establish that Mr. Kangas was actively using a controlled substance at the time he was arrested for this offense. Mr. Kangas was searched at the time of his arrest and he was not carrying any marijuana, controlled substance or otherwise. Mr. Kangas was not drug tested at the time of his arrest, and no evidence suggests Mr. Kangas was actively under the influence of marijuana at the time of his arrest.

While the Government need not "find 'categorical' matches" to overcome an as-applied challenge, as discussed above, evidence of a regulation being in line with this Nation's history and tradition of firearm regulation must be "relevantly similar." *Williams*, 113 F.4th at 660. Marijuana users may not constitutionally have their fundamental rights stripped under this statute. Disarming marijuana users does not comport with this Nation's historical tradition of firearm regulation. *See Connelly*, 117 F.4th at 278; *United States v. Daniels*, 124 F.4th 967, 974 (5th Cir, 2025); *Harrison*, 654 F.Supp. 3d at 1222. A marijuana user "clearly" cannot be

analogized to a dangerous person to the required "relevantly similar" standard. *Connelly*, 117 F.4th at 279. As such, any potential argument that historical laws disarming dangerous people renders § 922(g)(3) valid as applied here must fail. It should be noted that the Sixth Circuit has not applied a "dangerousness" approach to § 922(g)(3).

The history and tradition of this Nation show that marijuana users may not be disarmed. Even while the Founders enacted firearms regulation targeting political and religious minorities, they did not see fit to disarm those who abused alcohol or used other intoxicants. *Id*. Even though there is some evidence that individuals may have been banned from carrying firearms while actively intoxicated, that evidence is insufficient to extend that regulation "by banning all possession for an undefined set of users, even while they are not intoxicated." *Daniels*, 124 F.4th at 974. The most closely analogous group in the eighteenth and nineteenth centuries to today's marijuana users is alcoholics. *Connelly*, 117 F.4th at 279. Neither Congress, nor the states, saw fit to disarm alcoholics. *Id*. Outside that possible example, a mere user of marijuana is not relevantly analogous to a dangerous person, a mentally ill person, or any other potential historical example. *See id*.; *Daniels*, 124 F.4th at 974; *Harrison*, 654 F.Supp. 3d at 1199; *Veasley*, 98 F.4th 906, 915 (8th Cir. 2024). As such, the Government may not permanently strip away a person's fundamental Second Amendment rights based merely on that person allegedly being a marijuana user.

### III.  The remaining § 924(a)(1)(A) charge is immaterial.

The charge against Mr. Kangas for making a false statement in purchasing a firearm under § 924(a)(1)(A) must necessarily fail once § 922(g)(3) is found unconstitutional. These are derivative charges based on 2nd Amendment conduct, and as such the government should be

9

held to its historical analysis burden under *Bruen*. *See United States v. Worster*, 765 F. Supp. 3d 112, 127 (D.R.I. 2025)("If the defendant challenges a regulation that affects protected Second Amendment conduct—as these statutes necessarily do by putting conditions on purchasing firearms—the government bears the burden of showing that it is consistent with the Nation's history and tradition." *Citing Bruen*).

Section 924(a)(1)(A)'s requirement of keeping records free of false information is not implicated by an answer to an irrelevant question. Section 924(a)(1)(A) is not a statute that "criminalizes a false answer to an ultra vires question." *Abramski v. United States*, 573 U.S. 169, 206 (Scalia, J., dissenting). The reason behind requiring the questions on the form to be asked and that the "dealer keep certain records, [is] to enable federal authorities both to enforce the law's verification measures and to trace firearms used in crimes." *Id.* at 173. The question at issue here about whether the purchaser is a user of controlled substance relates only to verifying compliance with § 922(g)(3). Unlike clearly relevant questions such as name, address, and serial number, knowledge of whether a purchaser is a user of controlled substances is of no value in tracing a weapon. Finding that § 922(g)(3) is unconstitutional because gun possession cannot be prohibited based on an individual's status as a user of controlled substances renders the question about whether a person is a user of a controlled substance completely irrelevant.

The charge under § 924(a)(1)(A) should be dismissed as the question is irrelevant, despite the statute not containing a materiality requirement. Section 924(a)(1)(A) does not criminalize answers to irrelevant questions. *Id*. at 206 (Scalia, J., dissenting). A person should not be convicted of making *any* false statement, when that statement is irrelevant to the purpose of the statute. *Id*. The Court has cautioned against providing a "'boundless reading' of a statutory term given 'deeply serious consequences' that reading would entail." *Yates v. United States*, 574 U.S.

10

528, 547 (2015) (quoting *Bond v. United States*, 572 U.S. 844, 860 (2014)); *see also Dubin v. United States*, 599 U.S. 110, 114 (2023) (refusing to provide a "boundless interpretation").

This caution is particularly relevant in the criminal context. For example, in *Bond*, a married woman sought revenge against her husband's mistress by placing harmful chemicals on the mistress's car, mailbox, and doorknob in an effort to give her a rash. *Bond*, 572 U.S. at 860. Although the woman plainly used chemicals as a weapon, the Court held that she could not be prosecuted for violating the Convention on Chemical Weapons because this application clearly went beyond the purposes of the implementing statute. *Id*. *See also Yates*, 574 U.S. at 532.

This Court should not construe § 924(a)(1)(A) to such an incongruous extent. While making a false statement outside the purpose of a statute may not be ideal behavior, it should not be construed as felonious conduct. Where that statement is not relevant to any underlying law, whether it is true or false become immaterial. This Court should dismiss the § 924(a)(1)(A) charge against Mr. Kangas, as it is irrelevant in light of § 922(g)(3)'s unconstitutionality.

## CONCLUSION

The Court should dismiss all charges against Mr. Kangas. While often controversial, the Second Amendment is a right fundamental to this Nation. *Rahimi*, 602 U.S. at 690. Section 922(g)(3) as it currently stands, places a "far greater burden" on an individual's Second Amendment rights than this Nation's history and tradition of firearms regulation supports. *Connelly*, 117 F.4th at 282. The United States is a nation founded on individual liberty. When the Government regulates to weaken this liberty, the historical foundations of this Nation are undermined. Section 922(g)(3) is facially unconstitutional, as there is no evidence sufficient to support a finding that such a restriction is in accordance with our Founders' understanding of

11

permissible regulation. Further, such a regulation is clearly unconstitutional as applied. Recreational marijuana use is far below any threshold for disarmament considered by our ancestors. As such, § 922(g)(3) should be found unconstitutional, both facially and as applied to Mr. Kangas.

    The remaining charge necessarily should be dismissed. Section 924(a)(1)(A) cannot reasonably be applied to Mr. Kangas once § 922(g)(3) is found unconstitutional. The underlying question is irrelevant, and to construe § 924(a)(1)(A) to cover any false statement, regardless of its materiality or relevance, would lead to a boundless interpretation. As such, this Court should dismiss all charges against Mr. Kangas.

    Respectfully submitted,
JOSEPH MEDICI
FEDERAL PUBLIC DEFENDER

s/F. Arthur Mullins
F. Arthur Mullins (0080483)
Assistant Federal Public Defender
Fifth Third Center, Suite 490
1 South Main Street
Dayton, Ohio 45402
(937) 225-7687
Art_Mullins@fd.org

**<u>CERTIFICATE OF SERVICE</u>**

    I hereby certify that a copy of the foregoing document was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

s/F. Arthur Mullins
F. Arthur Mullins